IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00602-RM-KLM

LARRY ALLEN THOMPSON,

    Plaintiff,

v.

DEAN WILLIAMS, in his official capacity,
CHARLES A. KUDLAUSKAS, in his individual and official capacities,
HEATHER W. DAMON, in her individual and official capacities,
KATHLEEN I. BOYD, in her individual and official capacities,
LINDA PARO, in her individual and official capacities,
JOHN/JANE DOE, Medical Appt. Scheduler, in his/her individual and official capacities,
and
JOHN/JANE DOE, CDOC Chief Medical Administrator, in his/her individual and official capacities,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)** [#21][1] (the "Motion"), filed by Defendants Dean Williams ("Williams"), Charles A. Kudlauskas ("Kudlauskas"), Kathleen I. Boyd ("Boyd"), and Linda Paro ("Paro"). Plaintiff filed a Response [#97] in opposition to the Motion [#21], and these four Defendants filed a Reply [#29]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion [#21] has been referred to the

---

[1] [#21] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

–1–

undersigned for a recommendation regarding disposition. *See* [#22, #52]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#21] be **GRANTED in part and DENIED in part**.

## I. Background[2]

Plaintiff proceeds in this case as a pro se litigant incarcerated through the Colorado Department of Corrections ("CDOC").[3] On April 6, 2019, Plaintiff injured his left wrist while playing handball. *Am. Compl.* [#12] at 6. "[I]t was a non-contact injury which presented no signs of trauma (bruising/swelling)." *Id.* On April 9, 2019, Plaintiff submitted a kite for medical care "due to decreased motor function and the persistent/increasing pain of the left wrist and hand." *Id.* at 7. For some unknown reason, the request for medical assistance was not received by the facility's dispensary and forward to a medical provider until May 9, 2019. *Id.*

On May 17, 2019, Defendant Kudlauskas, a physician's assistant, examined Plaintiff, ordered an X-ray, and prescribed Tylenol and Motrin for pain management for five days. *Id.* The X-ray was taken on May 22, 2019, and was sent to Rocky Mountain

---

[2] All well-pled facts from the Amended Complaint [#12] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[3] The Court must construe liberally the filings of pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (*citing Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Radiologist, P.C., in Denver, Colorado, where Plaintiff was diagnosed with "[m]ild degenerative arthritis of the first [carpometacarpal] joint." *Id.*

On June 12, 2019, Plaintiff submitted another kite asking for a second opinion because he believed his wrist was injured and not merely arthritic. *Id.* On June 21, 2019, Defendant Kudlauskas examined Plaintiff again, "at which time the defendant was told that the pain was worsening and even the simplest of daily activities were becoming more and more difficult to accomplish (i.e., getting dressed, the brushing of teeth, writing, etc. . . .)." *Id.* at 8. Defendant Kudlauskas issued Plaintiff a "carpal tunnel wrist brace & ace wrap." *Id.* On July 10, 2019, Defendant Kudlauskas saw Plaintiff for a follow-up appointment. *Id.* Plaintiff again complained "of the deteriorating effects of the injury," which Defendant Kudlauskas noted were "out of proportion to physical and X-ray findings." *Id.* Defendant Kudlauskas prescribed Plaintiff 600 mg of Motrin twice daily as needed for pain for three months and submitted a "Consult Request" for an MRI. *Id.* The MRI was approved but, on the day it was supposed to occur, Plaintiff was told the machine had broken down and that his appointment would have to be rescheduled. *Id.*

On September 17, 2019, Plaintiff was transferred from Buena Vista Correctional Facility to Colorado State Penitentiary. *Id.* On October 5, 2019, Plaintiff submitted a kite asking about getting his MRI scheduled again. *Id.* Defendant Boyd, another physician's assistant, responded that the MRI had been rescheduled and further ordered Motrin for two weeks for pain management, which Plaintiff was told he could get at the facility's canteen. *Id.* After two weeks, Plaintiff submitted another kite asking for a renewal of his Motrin because the canteen was out of stock. *Id.* On October 21, 2019,

–3–

Defendant Boyd responded that there was now Motrin available at the canteen.  *Id.*

On October 28, 2019, Plaintiff finally received his MRI.  *Id.*  On November 12, 2019, Defendant Boyd determined that Plaintiff "[m]ay need ortho(pedic) referral."  *Id.* at 9.  On December 21, 2019, Defendant Boyd diagnosed Plaintiff with "[i]njury of unspecified muscle fascia tendon at wrist and hand level."  *Id.*  On March 4, 2020, Plaintiff was seen by an orthopedic specialist who stated that the injury had been improperly treated for too long and had become permanent and that Plaintiff should undergo surgery.  *Id.*

On April 6, 2020, Defendant Boyd examined Plaintiff, acknowledged the orthopedic specialist's determinations, prescribed the medication Keppra to Plaintiff (which Plaintiff states had numerous side effects), noted that it was "[u]nknown how postponement of 'elective' surgeries will effect [sic] his wrist surgery plan during corona epidemic," and extended Plaintiff's no work and no exercise restrictions.  *Id.*  On May 13, 2020, Defendant Boyd "was informed of Keppra's dangerous side effects and the ineffectiveness of the medication as a 'Pain Suppressant,'" although Plaintiff does not state whether he or someone else gave this information to Defendant Boyd.  *Id.* at 9-10.  Regardless, Defendant Boyd increased the dosage and encouraged its continued use.  *Id.* at 10.

On May 17, June 16, and August 17, 2020, Defendant Boyd contacted Defendant Paro, CDOC's off-site medical appointment scheduler.  *Id.*  After the last contact, Defendant Boyd noted that Plaintiff's wrist surgery had been scheduled but then postponed.  *Id.*  On October 19, 2020, Defendant Boyd told Plaintiff that his surgery was

still pending, and on December 21, 2020, she noted that the "COVID epidemic has delayed planned surgery." *Id.* Plaintiff asserts that during this period other inmates were receiving surgeries. *Id.*

Plaintiff brought this § 1983 action contending that the conduct and/or inaction by Defendant Williams, Kudlauskas, Boyd, and Paro (as well as several other Defendants not party to the present Motion [#21]) constituted deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment of the United States Constitution. *Id.* at 6. Plaintiff seeks injunctive relief from Defendant Williams in his official capacity, and damages from Defendants Kudlauskas, Boyd, and Paro. *Id.* at 15-16. In the present Motion [#21], these four Defendants contend that Plaintiff's claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.  Standard of Review

### A.  Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack

or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* at 1003. When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

**B.     Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 17 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.

2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.4d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

**A.  Eleventh Amendment Immunity**

Defendants Kudlauskas, Boyd, and Paro first argue that they are protected by Eleventh Amendment immunity to the extent Plaintiff seeks damages against them in their

–7–

official capacities.[4]   *Motion* [#21] at 7-8.

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   Courts interpret the Eleventh Amendment to prohibit a citizen from filing suit against a state in federal court.   *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).   A claim against a public official acting in his official capacity is treated like a claim against the state and is barred by the Eleventh Amendment.   *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   To the extent Plaintiff seeks money damages against Defendants in their official capacities, they are immune from such damages claims under the Eleventh Amendment.   *Id.*; *see, e.g.*, *Wauford v. Richardson*, 450 F. App'x 698, 699 (10th Cir. 2011).

Accordingly, the Court **recommends** that Plaintiff's Eighth Amendment claims against Defendants Kudlauskas, Boyd, and Paro in their official capacities be **dismissed without prejudice**.   *See Wauford*, 450 F. App'x at 699 (stating that claims barred by the Eleventh Amendment should be dismissed without prejudice).

**B.** **Eighth Amendment**

Because inmates "must rely on prison authorities to treat [their] medical needs," the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the

---

[4] Plaintiff does not seek any injunctive relief against these three Defendants.   *See Am. Compl.* [#12] at 15-16.

Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The test for deliberate indifference is both objective and subjective, in that a detainee must establish that: (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) that the defendant subjectively knew of and disregarded "an excessive risk to [the detainee's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

With respect to the objective component, "the test is met if the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Further, "it is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee had contact with the prisoner.'" *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)). Defendants did not cognizably argue in the Motion [#21] that Plaintiff failed to sufficiently allege the objective component of his claim, instead raising this argument for the first time in their Reply [#29]. "[A] party waives issues and arguments raised for the first time in a reply brief." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011). Thus, for purposes of resolving the present Motion [#21], the Court finds that Defendants have waived their argument regarding the objective component of Plaintiff's Eighth Amendment claim.

    1.    **Defendants Kudlauskas, Boyd, and Paro**

With respect to the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Farmer*, 511 U.S. at 837. Further, the "symptoms displayed are relevant . . . to the subjective component of the test: were the symptoms such that a prison employee knew the [specific] risk to the prisoner and chose (recklessly) to disregard it?" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). "Significantly, this level of intent can be demonstrated through circumstantial evidence." *Id.* at 752. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Thus, in this case, Plaintiff must adequately allege that each of these four Defendants knew of and disregarded a substantial risk of serious injury to Plaintiff.

In *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006), the Tenth Circuit explained that it "recognize[s] two types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." The pertinent question here is whether each Defendant was subjectively aware of the risk of serious injury to Plaintiff and recklessly ignored it by delaying or denying his access to appropriate medical care. *See, e.g.*, *Kellum v. Mares*, 657 F. App'x 763, 770 (10th Cir. 2016) (explaining that a deliberate indifference claim was stated where the "specific medical symptoms and vital signs presented to [the defendant] . . . indicated a need for further assessment, testing, diagnosis, and emergency medical treatment").

The Court finds that Plaintiff has failed to provide sufficient allegations to show that either Defendant Kudlauskas or Defendant Boyd was subjectively aware of a risk of

serious injury to Plaintiff and recklessly ignored it by delaying or denying his access to appropriate medical care. *See Kellum*, 657 F. App'x at 770. In short, as alleged by Plaintiff, Defendant Kudlauskas examined Plaintiff on May 17, June 21, and July 10, 2019, ordered an X-ray and an MRI, prescribed Tylenol and Motrin for pain management, and provided Plaintiff a wrist brace and Ace wrap. Defendant Boyd rescheduled Plaintiff's MRI, examined Plaintiff on several occasions (including December 21, 2019, April 6, 2020, and May 13, 2020), diagnosed Plaintiff's wrist injury, prescribed Motrin and Keppra for pain management, and kept in touch with both Plaintiff and Defendant Paro about scheduling Plaintiff's surgery. "[W]here a doctor merely exercises his considered medical judgment," the subjective component of the Eighth Amendment analysis is not satisfied. *Self*, 439 F.3d at 1232. "Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing." *Id.* In *Alloway v. Wackenhut Correctional Facility*, the Tenth Circuit Court of Appeals stated that, "when a prisoner does in fact receive medical care, he has no Eighth Amendment claim based merely on his disagreement with the nature of the diagnosis." 15 F. App'x 743, 744 (10th Cir. 2001) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)). Under the circumstances alleged by Plaintiff, the Court finds that his claim amounts to a difference of opinion or, at most, medical negligence. *Alloway*, 15 F. App'x at 744.

Similarly, the Court finds that Plaintiff has failed to provide sufficient allegations to show that Defendant Paro was subjectively aware of the risk of serious injury to Plaintiff and recklessly ignored it by delaying or denying his access to appropriate medical care.

*See Kellum*, 657 F. App'x at 770.   There are few specific allegations regarding Defendant Paro, CDOC's off-site medical appointment scheduler, beyond the fact that Defendant Boyd was communicating with her and that Defendant Paro kept conveying that the surgery was being postponed due to COVID-19.   There is no indication whatsoever that Defendant Paro had any specific knowledge of the severity of Plaintiff's injury or that she personally purposely delayed Plaintiff's surgery.

Even viewing the operative complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege specific facts showing that Defendant Kudlauskas, Defendant Boyd, or Defendant Paro was subjectively aware of a significant risk to Plaintiff's health such that his or her actions or inactions amounted to deliberate indifference in violation of the Eighth Amendment.   Accordingly, the Court **recommends** that the Motion [#21] should be **granted** to the extent that Plaintiff's Eighth Amendment claims against these three Defendants be **dismissed with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6).   *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should attach to a dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues.").

    **2.**    **Defendant Williams**

Defendant Williams is sued only in his official capacity and only for injunctive relief. *Am. Compl.* [#12] at 15-16.   Defendant Williams argues that Plaintiff "fails to provide any well pleaded facts showing that Defendant Williams, the Executive Director of the entire CDOC, had any specific awareness of [Plaintiff's] medical treatment at all, let alone any

–12–

involvement in any diagnoses or decisions to any alleged delay in his diagnosis or treatment."  *Motion* [#21] at 11-12.

Defendant Williams misunderstands the law here.  It is true that, in order for an official capacity injunctive relief claim to survive, the operative complaint "must contain sufficient factual allegations to state a claim for an Eighth Amendment violation."  *Id.* at 11 (citing *Ervin v. Wilson*, No. 12-cv-02602-PAB-MEH, 2013 WL 2317234, at *6 (D. Colo. May 24, 2013) (citing *Abu-Fakher v. Bade*, 175 F. App'x 179, 181 (10th Cir. 2006))). However, this does not mean that Defendant Williams himself must personally be subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists to Plaintiff.  *See Farmer*, 511 U.S. at 837.  The claim against Defendant Williams in his official capacity is actually a suit against the CDOC for injunctive relief.  *See Simmat v. United States Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005). Thus, unlike with individual capacity claims, Plaintiff does not need to provide allegations that Defendant Williams himself committed a constitutional violation; rather, Plaintiff must adequately allege that a constitutional violation was committed by someone at the CDOC such that Plaintiff may be entitled to injunctive relief from the CDOC.  *See, e.g.*, *Chapman v. Fed. Bureau of Prisons*, No. 15-cv-00279-WYD-KLM, 2015 WL 7883956, at *6 (D. Colo. Dec. 4, 2015) (holding that a claim for injunctive relief against the warden of the Bureau of Prisons in his official capacity could proceed where the plaintiff had adequately alleged that certain BOP employees had violated his constitutional rights).

Here, Defendant Williams argues that he has not personally violated Plaintiff's constitutional rights, and the Court has found above that Plaintiff has not adequately

alleged constitutional violations by Defendants Kudlauskas, Boyd, or Paro. However, Defendants have not addressed in the present Motion [#21] whether Plaintiff has adequately alleged constitutional violations by Defendants who are not parties to the present Motion [#21], or even by any non-parties. The Court is not inclined to perform this work sua sponte on behalf of Defendant Williams. Thus, the Court finds that dismissal of Plaintiff's claim for injunctive relief against Defendant Williams in his official capacity is premature at this time.

Accordingly, the Court **recommends** that the Motion [#21] be **denied** to the extent Defendant Williams seek dismissal of Plaintiff's claim against him in his official capacity for injunctive relief.

### IV.   Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#21] be **GRANTED in part and DENIED in part**. The Court **recommends** that the Motion be **granted** to the extent that all claims asserted against Defendants Kudlauskas, Boyd, and Paro be **DISMISSED**, as outlined above. The Court **recommends** that the Motion be **denied without prejudice** with respect to Plaintiff's claim against Defendant Williams in his official capacity for injunctive relief.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: February 14, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge